**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| COMMUNITY VOICE LINE, L.L.C., a Maryland limited liability company,<br><br>   Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>GREAT LAKES COMMUNICATION CORP., an Iowa corporation,<br><br>   Defendant and Counterclaimant. | No. C 12-4048-MWB<br><br><br><br>**MEMORANDUM OPINION AND ORDER REGARDING COMMUNITY VOICE LINE'S MOTION FOR SUMMARY JUDGMENT AS TO GREAT LAKES COMMUNICATION'S FIRST AMENDED COUNTERCLAIM** |

_____

This case originated as a diversity action by Community Voice Line, L.L.C. (CVL), a Maryland limited liability company, which provides conference call services, recorded content, audio streams, and other business services, against Great Lakes Communication Corporation (GLCC), an Iowa competitive local exchange carrier (CLEC), which provides local telephone services, other related telecommunications services, and, more specifically, "hosting" of the telephone numbers that CVL's customers would call to obtain CVL's services. CVL asserts claims for breach of contract and unjust enrichment arising from GLCC's alleged failure to pay CVL a marketing fee or commission from revenues that GLCC collected from originating carriers for calls from CVL's customers to CVL's telephone numbers "hosted" by GLCC. The pleading now at issue, however, is GLCC's First Amended Counterclaim (docket no. 42) against CVL, in which GLCC asserts counterclaims for actual or anticipatory breach of contract, declaratory relief, promissory estoppel, fraudulent

1

misrepresentation, fraudulent inducement, negligent misrepresentation, and civil conspiracy, all premised on GLCC's contention that CVL contracted, promised, or represented that it would indemnify GLCC from third-party claims against GLCC arising from various kinds of misconduct by CVL, but that CVL has now made clear that it will not do so or has refused to do so.[1]

On July 22, 2013, CVL filed its Motion For Summary Judgment As To The First Amended Counterclaim Filed By Great Lakes Communication Corp. (Motion) (docket no. 109), which is now before me.[2] In support of this Motion, CVL contends, in essence, that there was no agreement, promise, or representation, oral or written, by CVL to indemnify GLCC *at all*, but that, if there was, the indemnification language does not apply to any potential claims by non-party Alpine Audio Now, the only claims properly identified by GLCC in discovery responses as the basis for a demand for possible indemnification, that GLCC has never requested that it be indemnified by CVL as to claims by Alpine Audio Now, and that CVL has never refused to indemnify GLCC.

---

[1] GLCC originally asserted the same claims as third-party claims against third-party defendant Blitz Telecom Services, L.L.C. (Blitz), another Maryland limited liability company, which describes itself as a reseller of local calling traffic, and third-party defendant Robert Russell, allegedly a resident of Maryland, who is the registered agent and owner of both CVL and Blitz. On August 22, 2013, however, GLCC, Blitz, and Russell filed a Joint Stipulation For Dismissal With Prejudice As To Blitz Telecom Services, L.L.C., And Robert Russell (Stipulation) (docket no. 144) stipulating to the dismissal, with prejudice, of all claims and causes of action by GLCC against Blitz and Russell.

[2] Blitz and Russell also joined in this Motion as to the third-party claims by GLCC against them, but—as I observed in an Order Regarding Stipulation For Dismissal Of Blitz And Russell And Regarding Their Parts Of The Pending Motion For Summary Judgment (docket no. 146), and the remaining parties recognized in their Resistance and Reply, respectively—the Stipulation renders moot Blitz's and Russell's parts of this motion.

In its August 22, 2013, Resistance (docket no. 148), however, GLCC contends that the indemnity clauses are real, that they are applicable to several "somewhat related" judicial and administrative proceedings that GLCC belatedly identified in discovery responses filed *after* CVL filed its Motion, and that the indemnity clauses have been triggered. GLCC also argues, in the alternative, that there are triable issues of fact related to the existence of an indemnity contract, promise, or representation, and the terms thereof. GLCC also argues that this Motion—like CVL's prior July 2, 2012, Motion For Partial Summary Judgment (docket no. 16) on CVL's own breach-of-contract claim as to amounts due and owing by GLCC to CVL—is premature, because discovery has not been completed, the dispositive motion deadline is still months away, and CVL has not shown that the issues presented are ripe for summary disposition. GLCC does concede that its "conspiracy" claim should now be dismissed, after the voluntary dismissal of its third-party claims against the other alleged conspirators.

In its August 29, 2013, Reply (docket no. 150), CVL contends that GLCC's entire Resistance is predicated on an entirely new factual scenario first introduced into these proceedings in discovery responses provided *nine days after* CVL filed its Motion. CVL contends that GLCC is barred from proving its new arguments by an Order (Sanctions Order) (docket no. 106), filed on July 9, 2013, by Magistrate Judge Leonard T. Strand, imposing sanctions on GLCC for discovery misconduct. CVL also argues that, even if GLCC is permitted to offer the "new" evidence supporting its Resistance, that evidence shows that GLCC has only now made a demand for indemnification, so that there is still no support for an "anticipatory breach" claim against CVL. Finally, CVL contends that there are no disputes as to material facts precluding the entry of summary judgment, because GLCC has not shown that the purported indemnification obligation that GLCC has "cobbled together" from draft

3

agreements, which were never executed, covers any of the specific disputes for which GLCC now claims indemnification.

Although CVL requested oral arguments on its Motion, my crowded schedule has not permitted the timely scheduling of such oral arguments, and I find that the parties' briefs and other written submissions are sufficient for me to determine dispositive issues as a matter of law. Therefore, I have not held oral arguments on the present Motion, and I will resolve it on the parties' written submissions.

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must

4

> come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*). Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

Turning to GLCC's counterclaims, as the Iowa Supreme Court has explained,

> To prevail on a breach of contract claim, [the claimant] [i]s required to prove: (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [the claimant] has performed all the terms and conditions required under the contract, (4) the [opposing party's] breach of the contract in some particular way, and (5) that [the claimant] has suffered damages as a result of [the opposing party's] breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010); *and compare Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996) (stating that proof of a claim of fraudulent misrepresentation requires proof that a misrepresentation was made); *Kolkman v. Roth*, 656 N.W.2d 148, 156 (Iowa 2003) (stating that a promissory estoppel claim requires proof that a clear and definite promise was made). Here, contrary to CVL's contentions, GLCC *has* succeeded in generating genuine issues of material fact on a fundamental element of all of its claims, the existence of an indemnity agreement, promise, or representation, *see id.*; *Whalen*, 545 N.W.2d at 294; *Kolkman*, 656 N.W.2d at 156, including whether the indemnity agreement, promise, or

5

representation was oral or written.[3]  GLCC has done so by pointing to evidence of what the parties describe as the "2009 CVL Draft Agreement," related e-mails, *see* GLCC's Appendix (docket no. 148-3), 1-17, and the parties' performance as if they had an agreement, from which a rational juror could conclude that the parties agreed to a contract including an indemnification clause, at least orally, and attempted to confirm it with a written agreement.  *Torgerson*, 643 F.3d at 1042-43.

The 2009 CVL Draft Agreement provides the only statement of the *terms* of any indemnity agreement that GLCC has ever identified or relied upon in these proceedings, even if any agreement including an indemnity agreement was, itself, oral. *See, e.g., Hulbert v. Atherton*, 12 N.W. 780, 781 (Iowa 1882) ("When a proposition is in writing, and the acceptance is verbal, the contract is an oral contract.").  Thus, if the jurors find that an indemnity agreement existed, they would have to find, as a matter of law, that the agreement had the terms stated in the 2009 CVL Draft Agreement.  *Royal Indem. Co.*, 786 N.W.2d at 846 (explaining that a party asserting breach of contract must also prove the terms of the contract); *Whalen*, 545 N.W.2d at 294 (explaining that proof of a fraudulent misrepresentation requires proof of the content of the misrepresentation); *Kolkman*, 656 N.W.2d at 156 (explaining that proof of promissory estoppel requires proof of a "clear and definite" promise).

The "indemnity" provisions of the 2009 CVL Draft Agreement are the following:

---

[3] This conclusion is also contrary to my prediction in my February 1, 2013, Memorandum Opinion And Order Regarding Counterclaim And Third-Party Defendants' Motions To Dismiss (docket no. 71)—denying CVL's motion to dismiss GLCC's counterclaim, in which CVL contended that GLCC had not adequately alleged that there was any agreement, promise, or representation by CVL to indemnify GLCC—that GLCC's counterclaims likely could not survive a motion for summary judgment.

6

2.2.2 Compliance with Laws. . . . Customer [meaning CVL] agrees to defend, indemnify, and hold Carrier [meaning GLCC] harmless from all claims, investigations, alleged violations, costs, (including attorney's fees), liabilities and damages arising from the content, advertising, license and/or artwork of Customer's programs and/or services, or otherwise relating to any act or omission of Customer of its agents.

* * *

9.2 Indemnification. Each Party hereby agrees to indemnify, defend and hold the other Party harmless from any and all asserted or threatened liabilities, claims, suits, judgments, losses, damages, fines, forfeitures, assessments, costs and expenses, including reasonable attorneys' fees, expert fees and costs and expenses of appeal (collectively, the "Damages"), asserted by third parties as resulting from, arising out of or in collection [sic] with (i) the Party's performance or non performance of any of its obligations and duties set forth in this Agreement, including but not limited to any Damages caused by the negligent, intentional or wrongful acts or omissions to act of a Party, its officers, directors, agents, employees, representatives, or subscribers, (ii) a Party's breach of any warranty, covenant or representation made by it herein; (iii) bodily injury or death or damage to property resulting or claimed to result, in whole or in part, from any willful, intentional or negligent act or omission of a Party, its officers, directors, agents, employees, representatives or its subscribers; or (iv) violation by a Party, its officers, directors, agents, employees, representatives, or subscribers of any Tariffs, law, statute, ordinance, governmental order, rule or regulation. Notwithstanding anything herein to the contrary, Customer shall not assert a claim against Carrier for payment of the marketing fee or other damages as a consequence of non-payment of the Fees by an Originating Carrier.

CVL Draft Agreement, ¶¶ 2.2.2 and 9.2, CVL's Appendix at 4 and 8-9, GLCC's Appendix at 5 and 9-10.

What is fatal to GLCC's counterclaims is that, as a matter of law, this indemnity agreement does not apply to the only dispute timely identified by GLCC as the basis for its indemnity claim. *See, e.g., Cremona*, 433 F.3d at 620 (explaining that summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute). That dispute is the Alpine Audio Now litigation, *Community Voice Line, L.L.C. v. Alpine Audio Now, L.L.C.*, Case No. 24-C-12003756, in the Circuit Court for Baltimore City, State of Maryland, in which GLCC admits that it has not been named as a party, although Alpine Audio Now has contended that GLCC is an indispensable party. CVL's Appendix at 60-61 (GLCC's response to interrogatory). CVL contends, and GLCC does not dispute, that CVL's claims in that litigation arise from GLCC's "porting" of CVL's program numbers to Alpine Audio Now, upon Alpine Audio Now's demand, just before GLCC ended its business relationship with CVL. CVL argues that any claim that Alpine Audio Now might make against GLCC would be that GLCC did not own the program numbers and had no right to port them to Alpine Audio Now, but that such a claim does not arise *from CVL's performance under its agreement with GLCC* or *in connection with any violation by CVL of any law*. *See* CVL Draft Agreement, ¶¶ 2.2.2 and 9.2, CVL's Appendix at 4 and 8-9, GLCC's Appendix at 5 and 9-10. GLCC does not even attempt to explain how the Alpine Audio Now dispute falls within the scope of the indemnity clauses identified above. I conclude, as a matter of law, that the indemnity agreement, embodied in ¶¶ 2.2.2 and 9.2 of the 2009 CVL Draft Agreement, does not relate to the Alpine Audio Now dispute, because that dispute does not involve any claim against GLCC arising from any alleged misconduct of CVL identified as a basis for indemnity in those indemnity clauses.

8

GLCC did assert, in its original answers to pertinent interrogatories, that the disputes to which it alleged that the indemnity agreement applies go well beyond the Alpine Audio Now dispute, but did not identify any other disputes. It was only in supplemental responses, not provided until July 31, 2013, nine days after CVL filed the present Motion, that GLCC identified additional judicial proceedings to which GLCC contends that the indemnity agreement would apply. *See* GLCC's Appendix at 20. CVL contends—and I conclude—that GLCC has not, *and cannot*, introduce any documents in support of this belated assertion of additional disputes to which the purported indemnity agreement would apply, because Judge Strand's July 9, 2013, Sanctions Order prevents GLCC from doing so in yet another strategically-timed attempt to "move the goalposts." As CVL points out, prior to the filing of CVL's Motion, in response to CVL's Second Request for Production of Documents, nos. 19, 22, and 23, GLCC stated that it had produced all documents relevant to its claims that CVL breached its contracts with GLCC and all documents relevant to its claims for damages. *See* CVL's Reply, Exhibit E, Responses to Requests nos. 19, 22, 23. GLCC's attempts to hedge, on the ground that it had produced "all responsive documents which Great Lakes has located after a reasonable investigation," *id.*, and that it "reserves the right to supplement this response," *id.* at Response to Request No. 22, are precisely the kinds of hedging that Judge Strand found violated his prior order compelling discovery and that he foreclosed in his Sanctions Order. Sanctions Order (docket no. 106) at 7-10.

Because, as a matter of law, GLCC cannot show that the only indemnity terms that it has identified as part of the purported indemnity agreement—if it existed—apply to the only dispute that GLCC timely identified, the Alpine Audio Now dispute, CVL is entitled to summary judgment on all of GLCC's counterclaims, which are all premised

9

on violations of agreements, promises, or representations in the purported indemnity agreement.

THEREFORE,

1. The July 22, 2013, Motion For Summary Judgment As To The Third-Party Complaint Filed By Great Lakes Communication Corp. (docket no. 109) by third-party defendants Blitz and Russell is **denied as moot**, in light of the dismissal of all claims by GLCC against Blitz and Russell.

2. CVL's July 22, 2013, Motion For Summary Judgment As To The First Amended Counterclaim Filed By Great Lakes Communication Corp. (docket no. 109) is **granted** as to all of GLCC's counterclaims against CVL, and the counterclaim is **dismissed**. This matter will proceed to trial *only* on CVL's claims against GLCC.

**IT IS SO ORDERED**.

**DATED** this 11th day of October, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA