# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

COMMUNITY VOICE LINE, L.L.C., a
Maryland limited liability company,

        Plaintiff,

vs.

GREAT LAKES COMMUNICATION
CORP., an Iowa corporation; COMITY
COMMUNICATIONS, L.L.C., a
Nevada limited liability company;
ALPINE AUDIO NOW, L.L.C., a
Delaware limited liability company;
JOSH NELSON; FRANCE MEDIAS
MONDE t/a RADIO FRANCE
INTERNATIONALE; SIGNAL
FM HAITI; and JOHN DOES 1
THROUGH 10,

        Defendants.

No. C 12-4048-MWB

MEMORANDUM OPINION AND
ORDER REGARDING MOTIONS TO
DISMISS BY DEFENDANT ALPINE
AUDIO NOW AND DEFENDANTS
GLCC, COMITY, AND NELSON

---

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................... 2

II.   LEGAL ANALYSIS ................................................................ 3
    A.    *AudioNow's Motion To Dismiss* .................................... 3
        1.    *AudioNow's challenge to "improper" venue* ........................ 5
        2.    *AudioNow's challenge to personal jurisdiction* ...................... 8
            *a.*    *Dismissal*........................................... 8
            *b.*    *Abstention* ......................................... 11
        3.    *Summary* ................................................................. 14
    B.    *The Nelson Defendants' Motion To Dismiss* .............................. 14
        1.    *Rule 12(b)(6) standards* ................................................ 15
        2.    *The fraud-based claims* ............................................... 18
        3.    *The conversion claims*.................................................. 20

|   |   | a. | Elements ............................................................ 20 |
|   |   | b. | Conversion of telephone numbers ............................. 22 |
|   |   | c. | Conversion of confidential information ..................... 25 |
|   |   | d. | Summary........................................................... 27 |
|   | 4. | The § 258 claim.......................................................... 27 |
|   |   | a. | Statutory and regulatory provisions .......................... 28 |
|   |   | b. | Standing ........................................................... 30 |
|   |   | c. | Statutory violation .............................................. 34 |
|   |   | d. | Summary........................................................... 35 |

III. CONCLUSION ............................................................................. 35

# I.    INTRODUCTION

This case originated on May 15, 2012, as a diversity action by plaintiff Community Voice Line, L.L.C. (CVL), a Maryland limited liability company, which provides conference call services, recorded content, audio streams, and other business services, alleging claims of breach of contract and unjust enrichment. The original defendant was Great Lakes Communication Corporation (GLCC), an Iowa competitive local exchange carrier (CLEC), which provides local telephone services, other related telecommunications services, and, more specifically, "hosting" of the telephone numbers that CVL's customers would call to obtain CVL's services. CVL's original claims against GLCC arose from GLCC's alleged failure to pay CVL a marketing fee or commission from revenues that GLCC collected from originating carriers for calls from CVL's customers to CVL's telephone numbers "hosted" by GLCC.

On December 4, 2013, United States Magistrate Judge Leonard T. Strand granted CVL leave to file its Second Amended Complaint (docket no. 187), adding five named defendants, ten "John Doe" defendants, and seventeen new counts, including several new counts against existing defendant GLCC. In a Memorandum Opinion And Order (docket no. 213), filed January 23, 2014, I overruled GLCC's December 18, 2013, Objection To Order Granting Motion For Leave To File Second Amended Complaint (docket no. 195), and affirmed Judge Strand's December 4, 2013, Order Granting Plaintiff's Motion For Leave To File Second Amended Complaint (docket no. 186). In doing so, I explained that several of GLCC's challenges to the "futility" of the Second Amended Complaint were more appropriately addressed at a later procedural stage, that is, on motions pursuant to Rule 12(b) of the Federal Rules of Civil Procedure in response to the Second Amended Complaint, by the appropriate parties, including GLCC.

The two motions now pending before me are, indeed, Rule 12(b) motions to dismiss by both "old" and "new" defendants attacking claims against them in CVL's Second Amended Complaint. I will consider those motions to dismiss in turn.

## II.   LEGAL ANALYSIS

### A.   AudioNow's Motion To Dismiss

The first motion now before me is the March 10, 2014, Motion To Dismiss (docket no. 228) by "new" defendant Alpine Audio Now, L.L.C., which refers to itself simply as "AudioNow." AudioNow seeks dismissal of the claims against it in CVL's Second Amended Complaint for improper venue and lack of personal jurisdiction pursuant to Rule 12(b)(2) and (3). CVL filed its sealed Resistance (docket no. 241) to AudioNow's Motion To Dismiss on March 31, 2014, and AudioNow filed its Reply (docket no. 243) on April 7, 2014. AudioNow's Reply prompted CVL to file a Surreply (docket no. 251), with leave of court, on April 14, 2014. AudioNow then sought and, on April 18, 2014,

was granted, leave to file its Response To CVL's Surreply To Motion To Dismiss (docket no. 258). I found it appropriate to give AudioNow, as the movant, the "last word" on its Motion To Dismiss, adding, "At some point, the back and forth must end, and the underlying Motion To Dismiss must be resolved!" Order (docket no. 257).

Notwithstanding that statement, on April 29, 2014, CVL filed a Motion To Present New Evidence seeking to add to its Resistance to AudioNow's Motion To Dismiss additional documents, some of which are from what CVL describes as a "treasure trove" of previously unproduced documents and certain pleadings and documents produced in other litigation. In an Order (docket no. 262), filed April 29, 2014, I reiterated that, at some point, the back and forth must end, and the underlying Motion To Dismiss must be resolved. Therefore, I set an accelerated deadline for AudioNow to file a resistance to consideration of the additional documents offered by CVL and a response to those documents, if they were considered, prohibited CVL from filing any reply; denied AudioNow's request for oral arguments on its Motion To Dismiss; and stated that AudioNow's Motion To Dismiss would be considered fully submitted upon the filing of AudioNow's resistance and response to CVL's Motion To Present New Evidence. Although I had only authorized AudioNow to respond to CVL's Motion To Present New Evidence, GLCC filed a Response (docket no. 265) on April 30, 2014, disputing CVL's allegations about the disclosure of documents. On May 5, 2014, AudioNow filed its Resistance And Response To CVL's Motion And Argument To Present Newly Discovered Evidence (docket no. 267). AudioNowa also disputes CVL's allegations that the evidence in question is "newly discovered" and CVL's allegations that the "newly discovered evidence" is somehow contrary to Mr. Barbulescu's affidavit supporting AudioNow's allegations that this court lacks personal jurisdiction over AudioNow. AudioNow also disputes CVL's contention that it was improper for Mr. Barbulescu to have a business meeting with Nelson.

In my April 29, 2014, Order, I stated that oral arguments on AudioNow's Motion To Dismiss are unnecessary and would only further delay disposition of that Motion. Elaborating somewhat on that explanation for denying oral arguments, now, I add that I find the parties' briefing either adequate or, as to one part of AudioNow's Motion To Dismiss, wholly inadequate, so that I do not believe that oral arguments are likely to be of benefit to me. Therefore, I will resolve AudioNow's Motion To Dismiss on the parties' written submissions.

### 1. *AudioNow's challenge to "improper" venue*

AudioNow first seeks dismissal of the claims against it for improper venue, pursuant to Rule 12(b)(3), on the ground that there is a valid and enforceable "forum selection clause" in the contract between CVL and AudioNow selecting the Circuit Court of Baltimore City, State of Maryland, as the exclusive venue for "any dispute arising under or relating to" the parties' agreement. *See* Second Amended Complaint, Exhibit A, ¶ 12.5. In its Reply, AudioNow belatedly acknowledged the Supreme Court's decision in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, ___ U.S. ___, 134 S. Ct. 568 (2013). AudioNow even noted that *Atlantic Marine* "holds that the proper analysis in the presence of a valid forum selection clause pointing to a non-federal forum is an adjusted forum non conveniens analysis." AudioNow's Reply (docket no. 243) at 2-3 & n.2. It is plain, however, that AudioNow missed the full import of the Supreme Court's decision in *Atlantic Marine*.

As the Supreme Court explained in *Atlantic Marine*, Rule 12(b)(3) and 28 U.S.C. § 1406(a) "authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." ___ U.S. at ___, 134 S. Ct. at 577. The Court then held, "If the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district 'wrong.'" *Id.* at ___, 134 S. Ct. at 578. The Court held, further, "Although a forum-selection clause does not render venue

5

in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause [pointing to a different federal forum] may be enforced through a motion to transfer under § 1404(a)." *Id*.

Still more importantly, here, in *Atlantic Marine*, the Court explained, "If venue is proper under federal venue rules, it does not matter for the purpose of Rule 12(b)(3) whether the forum-selection clause points to a federal or a nonfederal forum." *Id*. at ___, 134 S. Ct. at 580. Thus, the Court explained,

> [T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens. Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) ("For the federal court system, Congress has codified the doctrine ..."); see also notes following § 1404 (Historical and Revision Notes) (Section 1404(a) "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper"). *For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of* forum non conveniens *"has continuing application in federal courts." Sinochem*, 549 U.S., at 430, 127 S.Ct. 1184 (internal quotation marks and brackets omitted); see also *ibid*. (noting that federal courts invoke *forum non conveniens* "in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best" (internal quotation marks and citation omitted)). And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, *courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-*

> selection clause pointing to a federal forum. *See Stewart*
> *[Organization, Inc. v. Ricoh Corp.]*, 487 U.S. [22,] 37, 108
> S.Ct. 2239 [(1988)] (SCALIA, J., dissenting) (Section
> 1404(a) "did not change 'the relevant factors' which federal
> courts used to consider under the doctrine of forum non
> conveniens" (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29,
> 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955))).

*Atlantic Marine Constr. Co., Inc.*, ___ U.S. at ___, 134 U.S. at 480 (emphasis added).

It is plain, then, that AudioNow's Rule 12(b)(3) Motion To Dismiss for improper venue is not the appropriate way for AudioNow to attempt to enforce the forum-selection clause. Nowhere in the portion of its Motion seeking dismissal for improper venue does AudioNow so much as mention the statutory venue requirements in 28 U.S.C. § 1391, let alone assert that CVL has not satisfied them. *Cf. id.* at 577-78 (a contractual forum-selection clause notwithstanding, the forum is only "wrong" if it is not the forum established by federal statute). Even to the extent that there might be some overlap between the relevant factors in a proper *forum non conveniens* analysis, involving a forum-selection clause pointing to a non-federal form, and the relevant factors concerning the validity and enforceability of a forum-selection clause, I am loathe to reformulate the parties' arguments to fit the proper analytical framework.

Therefore, the part of AudioNow's Motion To Dismiss seeking dismissal for improper venue is denied. AudioNow can, however, file a proper motion challenging this forum, on the basis of a forum-selection clause, pursuant to the *forum non conveniens* doctrine.[1]

---

[1] I also note that I found woefully inadequate the parties' briefing of the question of whether or not the forum-selection clause at issue in this case encompasses both contractual and tort (or other non-contractual) claims. The parties' arguments on that issue were, at best, conclusory, with no real assessment of the factual or legal relationship

## 2. *AudioNow's challenge to personal jurisdiction*

In the second part of is Motion To Dismiss, AudioNow seeks dismissal of the claims against it in CVL's Second Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). This part of AudioNow's Motion To Dismiss is at least on the proper procedural footing.

### a. *Dismissal*

I have explained the standards for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) in some detail on a number of occasions. *See, e.g., Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1024-26 (N.D. Iowa 2013). Suffice it to say that, to allege personal jurisdiction, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant in question can be subjected to personal jurisdiction within the state; that I may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion; that, in the absence of an evidentiary hearing, the pleader is only required to make a "minimal" prima facie showing of personal jurisdiction; and that I must view the evidence in the light most favorable to and resolve all conflicts in favor of the pleader. *Id.* at 1024.

Although the exercise of personal jurisdiction is only permissible when it comports with due process, due process is satisfied (and the requirements of Iowa's long-arm statute are met) if the defendant has sufficient "minimum contacts" with the forum state. *Id.* at

---

of the non-contractual claims to CVL's contract claims or the parties' contractual relationship. The parties also failed to assess, *inter alia*, whether the determination of the scope of the forum-selection cause is determined under Iowa law (the law of the forum state), Maryland law (in light of the choice-of-law and forum-selection clauses of the parties' contract), Eighth Circuit law (the law of this forum's federal appeals court), or Fourth Circuit law (the law of the federal appeals court for the circuit including Maryland).

1025 & n.3. To determine whether a defendant has sufficient contacts to satisfy due process, courts in this circuit consider the following factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) the state's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Id.* at 1025 (quoting *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012)). The third factor distinguishes "specific" jurisdiction from "general" jurisdiction, because "specific" jurisdiction, unlike "general" jurisdiction, requires a relationship between the forum, the cause of action, and the defendant. *Id.* at 1025-26. Finally, due process requires that the court consider, in the totality of the circumstances, whether a party's contacts with the forum state are such that requiring the party to defend an action in that forum would not offend traditional notions of fair play and substantial justice. *Id.* at 1035 (internal quotation marks and citations omitted). To put it another way, "[T]he exercise of [personal] jurisdiction satisfies due process when the defendant's contacts with the forum are such that it 'should reasonably anticipate being haled into court there.'" *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

AudioNow asserts that it has none of the traditional contacts with Iowa that would warrant the exercise of "general" personal jurisdiction over it, and CVL does not argue otherwise. AudioNow also argues that any contacts it had with Iowa in relation to the parties' dispute—a few contracts with Iowa customers, sixteen servers located at GLCC's facility, and two one-day maintenance trips for those servers by AudioNow's personnel— are too few and too tenuous to warrant the exercise of "specific" personal jurisdiction. I disagree.

I recognize that there is no consensus yet among the federal Circuit Courts of Appeals on the extent to which either (1) a defendant's placement of servers in the forum

as part of allegedly wrongful conduct, or (2) a defendant's use of access to another's server in the forum state to commit allegedly wrongful conduct—such as appropriating a plaintiff's confidential information—satisfies the requirements of "specific" personal jurisdiction. *But see MacDermid, Inc. v. Deiter*, 702 F.3d 725, 729-31 (2d Cir. 2012) (holding that a former employee's accessing a server located in the plaintiff's offices in the forum to obtain confidential data files satisfied Connecticut's long-arm statute for personal jurisdiction); *Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 n.9 (4th Cir. 2001) (observing that, although merely transmitting content to a server in the forum state cannot support the exercise of personal jurisdiction, operating a website by uploading data from a forum state to a server outside the forum state was sufficient to establish personal jurisdiction).

Although the Eighth Circuit Court of Appeals has not spoken on the issue, it has adopted a "sliding scale" to determine sufficiency of contacts to support "specific" personal jurisdiction in the somewhat analogous situation of contacts through a website. *See, e.g., Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). That "sliding scale" ranges from fully-interactive websites permitting contract formation and repeated transmission of computer files, which are sufficient to warrant the exercise of personal jurisdiction, to passive websites that merely post information, which are insufficient. *Id.* I find that a similar "sliding scale"—considering server location, the nature of the activity on or through that server, and the relationship of that server to alleged wrongdoing— provides guidance on the question of "specific" personal jurisdiction.

Here, framed as either a *Zippo* question of degree of interactivity, *see id.*, or as a question of the traditional factors of nature, quantity, and quality of contacts with the forum state and their relationship to the alleged wrongdoing, *see Foreign Candy Co., Inc.*, 950 F. Supp. 2d at 1024, I conclude that CVL's allegations are sufficient to make

the "minimal" showing required at this juncture to support "specific" personal jurisdiction over AudioNow in this forum. CVL has alleged—and AudioNow appears to admit, at least for purposes of its Motion To Dismiss—that AudioNow had placed sixteen servers in GLCC's facilities. CVL has adequately pleaded that those servers were used by AudioNow to transact business in Iowa in a way analogous to a fully-interactive website, in that they were how AudioNow conducted its business with its customers. Furthermore, CVL has pleaded that AudioNow used those servers to engage in the alleged wrongdoing with GLCC that is the gravamen of all of CVL's claims. The two trips by AudioNow personnel to Iowa—whether they were simply to fix and maintain those servers, as AudioNow asserts, or were to conduct business meetings with GLCC's principal, as CVL asserts—are simply additional contacts with Iowa specifically related to the claims at issue that put more icing on the cake. Finally, I conclude that the exercise of personal jurisdiction over a business with this quantity and quality of contacts with this kind of relationship to the plaintiff's causes of action does comport with fair play and substantial justice. *Cf. id.* Indeed, based on CVL's allegations concerning AudioNow's servers in Iowa, I find that AudioNow could and should reasonably have anticipated that it could be haled into court in this forum. *Dairy Farmers of Am., Inc.*, 702 F.3d at 477 (citing *World-Wide Volskwagen*, 444 U.S. at 297).

I conclude that the part of AudioNow's Motion To Dismiss asserting that this court lacks personal jurisdiction over AudioNow must be denied.

### b. Abstention

AudioNow contends that, even if this court has personal jurisdiction over it, this court should abstain from exercising that personal jurisdiction, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in favor of the Maryland state court action that CVL brought against AudioNow well before attempting

to add AudioNow as a defendant here. As the Eighth Circuit Court of Appeals recently explained,

> A district court's decision to abstain pursuant to *Colorado River* is reviewed for an abuse of discretion. *Fru–Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). "Federal courts, however, have a 'virtually unflagging … obligation to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter.'" *Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006)); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In keeping with this obligation, we held in *Fru–Con* that a district court may utilize the Colorado River doctrine only "when [1] parallel state and federal actions exist and [2] exceptional circumstances warrant abstention." *Fru–Con Constr. Corp.*, 574 F.3d at 534.

*Cottrell v. Duke*, 737 F.3d 1238, 1244-45 (8th Cir. 2013) (footnote omitted).

The "parallel action" prong requires "substantial similarity" between the actions, which requires, in turn, that "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Fru-Con Constr. Corp.*, 574 F.3d at 534. "This analysis focuses on matters as they currently exist, not as they could be modified." *Id.* at 535 (citing *Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (8th Cir. 1994)). "Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings." *Id.* (citing *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001)).

This action is not "parallel" with the Maryland state court action. This action involves additional defendants (GLCC, Comity, and Nelson), additional claims (the claims against defendants other than AudioNow, including GLCC), and an additional "conspiracy" claim against AudioNow (and other defendants), and the two lawsuits arise

from only *some* of the same alleged events, and involve only *some* of the same damages, but not all of the same events and damages. Although AudioNow may be correct that the Maryland lawsuit could be modified to include all of the claims and all of the parties involved in this action, I must look at the two actions as they "currently exist." *Id*. Moreover, any doubt as to the "parallel" nature of the two proceedings requires this federal court to exercise jurisdiction. *Id*.

AudioNow's request that I stay this action in favor of the Maryland action is denied.[2]

---

[2] The conclusion that the "parallel action" prong of the *Colorado River* abstention analysis is not met makes it unnecessary for me to consider the "exceptional circumstances" prong. I note, in passing, that six "non-exhaustive" factors relevant to whether the "exceptional circumstances" prong is met are the following:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru-Con Constr. Corp.*, 574 F.3d at 534 (quoting *Mountain Pure, L.L.C. v. Turner Holdings, L.L.C.*, 439 F.3d 920, 926 (8th Cir. 2006)). While I am sympathetic to the notion that all of the claims against all of the parties should be decided in one action, to avoid piecemeal litigation and possible inconsistent results, that "sympathy" simply does not trump the lack of "parallel" actions at this time.

### 3.    Summary

AudioNow's March 10, 2014, Motion To Dismiss (docket no. 228) is denied in its entirety.  This forum is not an "improper" forum within the meaning of Rule 12(b)(3), notwithstanding a forum-selection clause that may indicate that the parties agreed to litigate all of the claims between CVL and AudioNow in a different forum.  Furthermore, this court does not lack personal jurisdiction over AudioNow, so that dismissal is not appropriate pursuant to Rule 12(b)(2), and it is not appropriate for this court to abstain from exercising that jurisdiction pursuant to *Colorado River*.

## B.    The Nelson Defendants' Motion To Dismiss

The second motion now before me is another Rule 12 Motion to Dismiss (docket no. 230) by "old" defendant GLCC and "new" defendants Josh Nelson and Comity Communications, L.L.C. (Comity), filed on March 24, 2014.  Comity, a Nevada limited liability company with its principal place of business in Des Moines, Iowa, allegedly provides the same or similar services as GLCC, but is licensed to conduct business as a CLEC in Texas, California, Florida, Illinois, and possibly other states.  Because individual defendant Josh Nelson allegedly "entirely control[s] both GLCC and Comity," Second Amended Complaint (docket no. 187), ¶ 9, I will refer to these defendants collectively as "the Nelson Defendants."

In their Motion To Dismiss, the Nelson Defendants seek dismissal of the "fraud-based" claims against them in Counts VII and VIII, the "conversion" claims against them in Counts XVI and XVII, and the claim of a violation of 47 U.S.C. § 258 against them

in Count XVIII,[3] all for failure to state claims upon which relief can be granted, pursuant to Rule 12(b)(6).[4]  CVL filed its Resistance (docket no. 242) to the Nelson Defendants' Motion To Dismiss on April 7, 2014, and the Nelson Defendants filed their Reply (docket no. 252) on April 14, 2014.

I will consider the Nelson Defendants' Motion as it relates to each of these claims or groups of claims in turn.  First, however, I will summarize the standards applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

### 1.    *Rule 12(b)(6) standards*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  As the Eighth Circuit Court of Appeals has explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party.  *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

---

[3]  Count XVIII of the Second Amended Complaint (docket no. 187) originally alleged a violation of 47 U.S.C. § 264, a non-existent code section.  In an Order (docket no. 229), filed March 11, 2014, United States Magistrate Judge Leonard T. Strand corrected that typographical error by deeming references to 47 U.S.C. § 264 in Count XVIII to be replaced with references to 47 U.S.C. § 258.

[4]  The Nelson Defendants' Motion purports to include an alternative motion for a more definite statement.  The Nelson Defendants stated no basis or authority for such alternative relief, however, anywhere in their Motion or their opening brief.  Consequently, I consider the alternative request for a more definite statement to be waived, and I will not consider it further.

> claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,
> 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
> (internal quotation omitted). "A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is liable
> for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[5] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

---

[5] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards). [6]

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726

---

[6] In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint,'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). The parties have not offered materials outside of the pleadings in support of or resistance to the Nelson Defendants' Motion To Dismiss, however.

F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory").

### 2. *The fraud-based claims*

The Nelson Defendants seek dismissal of the "fraud-based" claims against GLCC and Nelson in Counts VII and VIII of CVL's Second Amended Complaint on the ground that CVL has failed to plead fraud with the required "particularity." More specifically, they contend that CVL has failed to plead any facts raising a plausible inference that they made a promise not to steal CVL's customers knowing that the promise was false or misleading when made in 2009—in other words, that the promise was made with no intent to perform. At most, they contend that CVL has alleged that they later broke that promise.

The Eighth Circuit Court of Appeals has recognized that courts have used Rule 12(b)(6) to enforce Rule 9(b)'s standards for pleading fraud with particularity. *See Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763-64 (8th Cir. 2011). Although Rule 9(b) permits "[m]alice, intent, knowledge, and other conditions of a person's mind" in support of a fraud claim to "be alleged generally," dismissal of a fraud claim pursuant to Rule 12(b)(6) may be appropriate if reasonable inferences of the required mental state cannot be drawn from the factual pleadings. *Id*. at 764-65. Indeed, I understood the pleading of fraud to impose such a requirement, even before *Twom-bal*, when I concluded that, although Rule 9(b) allows a defendant's mental state supporting a fraud claim to be "alleged generally," the plaintiff must still "allege facts that give rise to a strong inference of fraudulent intent." *Brown v. North Central F.S., Inc.*, 987 F.

Supp. 1150, 1156 (N.D. Iowa 1997). In *Brown*, I concluded that evidence that a defendant subsequently broke a promise does not give rise to an inference that the defendant did not intend to perform at the time that the promise was made. *Id*. at 1156-58. Rather, I explained, adequate factual pleadings that give rise to an inference of fraudulent intent at the time include evidence that the defendant could not perform at the time the promise or representation was made; that the defendant had already undertaken action that was inconsistent with the promise or representation; that the defendant repudiated the promises or representations soon after they were made with no intervening change in the situation; that the defendant failed even to attempt any performance; or that the defendant continued to offer assurances after it was clear that the defendant would not perform as promised. *Id*. at 1159.

CVL argues that allegations sufficient to meet these requirements include its allegations that, in July 2009, Nelson agreed to "redlines" to a proposed contract incorporating CVL's confidentiality and non-circumvention provisions, but then purposefully failed to sign and return the contracts as promised. CVL contends that it has explained why such fraudulent acts would benefit the Nelson Defendants. CVL contends that, accepting these allegations as true, it is reasonable to infer that Nelson was intentionally keeping his options open. CVL argues that it just happened that Nelson was not presented with an opportunity to repudiate his promises to CVL until 3 years after the parties commenced working together pursuant to their unsigned agreement. Although the Nelson Defendants contend that any repudiation of promises was in response to changes in the situation that are apparent from allegations in the Second Amended Complaint, CVL argues that those changes were simply the opportunity to repudiate the agreement intentionally left open in 2009.

Whether these factual allegations are sufficient to plausibly suggest that Nelson never had the intent to perform or that his representations to CVL in 2009 were knowingly

false is a very close question. They can, perhaps, reasonably be understood as allegations that Nelson had already undertaken action *in 2009* that was inconsistent with a promise not to share CVL's confidential information or to circumvent the provisions of the parties' agreement. *See Brown*, 987 F. Supp. at 1159 (explaining that such allegations might be sufficient to plausibly plead the required mental state for a fraud claim); *see also Richter*, 686 F.3d at 850 (explaining that, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face); *accord Freitas*, 703 F.3d at 438; *Whitney*, 700 F.3d at 1128. I conclude that CVL has—although perhaps just barely—adequately pleaded its fraud claims. Whether or not those claims should ultimately go to a jury should be decided on a more complete record.

The part of the Nelson Defendants' Motion To Dismiss seeking dismissal of the "fraud-based" claims against GLCC and Nelson in Counts VII and VIII of CVL's Second Amended Complaint is denied.

### 3. *The conversion claims*

Next, the Nelson Defendants seek dismissal of the "conversion" claims against GLCC and Comity in Counts XVI (conversion of telephone numbers) and XVII (conversion of confidential information) for failure to state claims upon which relief can be granted. The Nelson Defendants contend, first, that telephone numbers cannot be "converted." They also contend that there has been no "conversion" of CVL's confidential information, because CVL was never "deprived" of the purported confidential information.

#### a. *Elements*

As the Iowa Supreme Court has explained,

> Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to the property. *Ezzone v. Riccardi*, 525 N.W.2d 388, 396 (Iowa 1994). The wrongful control must amount to a serious

> interference with the other person's right to control the
> property. *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d
> 235, 247 (Iowa 1988) (citing Restatement (Second) of Torts
> § 222A(1) (1965)).

*Condon Auto Sales & Service, Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1991); *accord Wahlen v. Connelly*, 621 N.W.2d 681, 687 (Iowa 2000) (quoting *Condon Auto Sales*, 604 N.W.2d at 593). To put it another way, "[c]onversion is the intentional exercise of control over property 'which so seriously interferes with the right of another to control it that the actor may justly be required to pay . . . the full value of the chattel.'" *State v. Hollinrake*, 608 N.W.2d 806, 808 (Iowa Ct. App. 2000) (quoting RESTATEMENT (SECOND) OF TORTS § 222A(1) (1964)). Conversion may be committed, *inter alia*, "by obtaining the chattel through fraud or by using a chattel, properly within one's control, in an unauthorized manner." *Id.* (citing RESTATEMENT (SECOND) OF TORTS §§ 221(b), 228).

Iowa law does not necessarily require that the claimant *own* the property. Rather, the Iowa Supreme Court has described the requirement as proof of "ownership by the plaintiff *or other possessory right in the plaintiff* greater than that of the defendant." *Bearbower v. Bearbower (In re Estate of Bearbower)*, 426 N.W.2d 392, 394 n.1 (Iowa 1988) (emphasis added) ("The essential elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to plaintiff." (citing cases)); *see also Blackford v. Prairie Meadows Racetrack and Casino, Inc.*, 778 N.W.2d 184, 188 (Iowa 2010) ("In order to establish a conversion claim, the plaintiff must establish a possessory interest in the property."); *Welke v. City of Davenport*, 309 N.W.2d 450, 452 (Iowa 1981) ("To maintain an action for conversion the plaintiff must have a possessory right in the property converted. Actual possession at the time of

conversion is sufficient to enable the plaintiff to maintain the action." (citations omitted)).

Iowa courts recognize the following factors as relevant to the determination of whether interference with the property is sufficiently serious to constitute conversion:

> (a) the extent and duration of the actor's exercise of dominion and control;
>
> (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
>
> (c) the actor's good faith;
>
> (d) the extent and duration of the resulting interference with the other's right of control;
>
> (e) the harm done to the chattel; and
>
> (f) the inconvenience and expense caused to the other.

*Kendall/Hunt Publ'g Co.*, 424 N.W.2d at 247 (quoting RESTATEMENT (SECOND) OF TORTS § 222A(2) (1964)); *Larson v. Great West Cas. Co.*, 482 N.W.2d 170, 174 (Iowa Ct. App. 1992); *see also Condon Auto Sales*, 604 N.W.2d at 593 (recognizing, "Good faith by the defendant is a factor to consider in determining whether the interference amounts to conversion." (citing *Kendall/Hunt Publ'g Co.*, 424 N.W.2d at 247, in turn quoting RESTATEMENT (SECOND) OF TORTS § 222A(2) (1965)).

### b. *Conversion of telephone numbers*

The Nelson Defendants contend that telephone numbers cannot be "converted," because they are public resources and that no private entity can own or have a property interest in them. The parties have not cited, and I have not found, any case addressing whether a "conversion" claim under Iowa law will lie for "conversion" of a telephone number. The parties have, however, cited dueling authorities concerning whether or not anyone can "own" or have a "property interest" in telephone numbers. *Compare, e.g., Starnet, Inc. v. Naps*, 355 F.3d 634, 637 (7th Cir. 2004) ("No one has a property interest

in a phone number." (citing 47 C.F.R. § 52.107(a) and *Jahn v. 1–800–FLOWERS.com, Inc.*, 284 F.3d 807 (7th Cir. 2002)); *Business Edge Group, Inc. v. Champion Mortg. Co., Inc.*, 519 F.3d 150, 154 (3rd Cir. 2008) (noting that subscribers do not own toll free telephone numbers and further stating that telephone numbers are a public resource); Alliance for Telecommunications Industry Solutions, Inc. (ATIS), Guidelines for the Administration of Telephone Numbers, Section 1.0, January 20, 2012, *with, e.g., Staton Holdings, Inc. v. First Data Corp.*, No. Civ.A.3:04-CV-2321-P, 2005 WL 1164179, *6 (N.D. Tex. May 11, 2005) (holding that a conversion claim would lie concerning disconnection and transfer of a telephone number, because a particular telephone number may have immense value to a particular party); *and cf. Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (allowing a plaintiff to bring a conversion suit for the intangible property right in his domain name and acknowledging the value of the intangible property right).

My own more targeted research suggests that some federal courts have recognized that a "conversion" claim under state law may lie for conversion of telephone numbers. *See, e.g., Express Companies v. Mitel Techs., Inc.*, No. 12–CV–2818 W(MDD), 2013 WL 5462334, *8 (S.D. Cal. Sept. 30, 2013) (denying a motion to dismiss a claim for conversion of telephone numbers, because the plaintiff had alleged ownership of the numbers and it was "easily inferred" that the plaintiff was "asserting a right of possession of those telephone numbers," where California law, like Iowa law, frames the first element of a "conversion" claim as "the plaintiff's ownership *or right to possession of* personal property" (citing *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998), with emphasis added by this court)); *Southeastern Wholesale Corp. v. Cox Commc'ns Hampton Roads, L.L.C.*, Civil Action No. 2:12cv701, 2013 WL 2147478, *6 (E.D. Va. May 14, 2013) (denying a motion to dismiss a claim for "conversion" of a toll-free telephone number, "[b]ecause there is a significant split in

authority on this issue [of whether a plaintiff has a property interest in a toll-free number] (and importantly, little guidance from the Virginia courts)."); *Staton Holdings, Inc.*, 2005 WL 1164179 at *5-*6 (concluding that such a cause of action "may lie" for a series of numbers assigned to a business, but not suggesting that "all telephone numbers may be subject to a cause of action for conversion").

The conclusions of these courts that a claim for "conversion" of a telephone number may lie is consistent with Iowa law concerning a "conversion" claim. First, CVL is not required to allege (or prove) that it actually "owned" the telephone numbers at issue. Rather, it must allege (and prove) that it has a "possessory right [in the numbers] greater than that of the defendants." *Blackford*, 778 N.W.2d at 188; *Bearbower*, 426 N.W.2d at 394 n.1; *Welke*, 309 N.W.2d at 452; *and compare Express Companies*, 2013 WL 5462334 at *8 (also declining to dismiss a claim of "conversion" of telephone numbers where California law required a "possessory interest," not necessarily "ownership," for the claim to lie). CVL alleges that it was the "end user" of the numbers at the time of the alleged "conversion." Also, CVL has alleged sufficiently serious "interference" with its "possessory interest" in the numbers, because it has alleged that the defendants deprived CVL of those numbers and "ported" them to AudioNow, without CVL's consent, causing it inconvenience and loss of revenue. *See Kendall/Hunt Pugl'g Co.*, 424 N.W.2d at 247 (identifying, *inter alia*, the extent, nature, and duration of the deprivation of control and the harm, inconvenience, and expense caused to the claimant as factors relevant to whether any interference is sufficiently severe to support a "conversion" claim). CVL has also expressly alleged that the defendants "ported" the numbers to AudioNow contrary to express instructions from CVL, which is sufficient to generate an inference that the defendants acted in "bad faith." *See id.* (recognizing the actor's "good faith" as another relevant factor in the analysis of the severity of the interference).

The Nelson Defendants are not entitled to dismissal of CVL's "conversion" claim in Count XVI, alleging conversion of telephone numbers.

### c. *Conversion of confidential information*

The Nelson Defendants also argue that Count XVII (conversion of confidential information) must be dismissed, because CVL was never "deprived" of the purported confidential information. The Nelson Defendants contend that, for a party to be liable for "conversion," that party must deprive an owner of the property permanently or for an indefinite time. The Nelson Defendants contend that CVL was not truly deprived of the alleged "confidential information," because CVL has only alleged that it was deprived of the "exclusive rights to use" that "confidential information." Indeed, the Nelson Defendants contend that CVL has not and cannot allege that it does not now have access to the alleged "confidential information."

These arguments are too clever by half. Nothing in the statement of the elements of a "conversion" claim under Iowa law, above, requires or suggests that there must be a "complete" or even an "indefinite" deprivation of the property for a "conversion" claim to lie, although either would certainly suffice. Rather, the question is whether the defendant intentionally "exercise[d] control" over the property that "'so seriously interferes with the right of another to control it that the actor may justly be required to pay . . . the full value of the chattel.'" *Hollinrake*, 608 N.W.2d at 808 (quoting RESTATEMENT (SECOND) OF TORTS § 222A(1)). Again, applying the relevant factors identified by Iowa courts to determine whether the "interference" with the property has been "sufficiently severe," I conclude that CVL has plausibly alleged "conversion" of its "confidential information." CVL has alleged that the defendants used and shared its "confidential information," without CVL's consent, causing it inconvenience and loss of revenue. *See Kendall/Hunt Pugl'g Co.*, 424 N.W.2d at 247 (identifying, *inter alia*, the extent, nature, and duration of the deprivation of control and the harm, inconvenience,

and expense caused to the claimant as factors relevant to whether any interference is sufficiently severe to support a "conversion" claim). Indeed, the precise value of "confidential information" is that it is *not* shared with unauthorized parties, whether or not CVL continues to have access to and use of that information. CVL has also expressly alleged that the defendants did so contrary to express agreement by Nelson that GLCC would not steal CVL's customers or business plan, notwithstanding his failure to sign a written agreement embodying those promises, which is sufficient to generate an inference that the Nelson Defendants acted in "bad faith." *See id.* (recognizing the actor's "good faith" as another relevant factor in the analysis of the severity of the interference).

The Iowa Supreme Court's decision in *Kendall/Hunt Publishing Company*, on which the Nelson Defendants rely, is not to the contrary. The "conversion" claim in *Kendall/Hunt Publishing Company* did not relate to alleged "confidential information," but to the design and layout of a book already published—something that would necessarily be and had been publicly displayed. 424 N.W.2d at 247. The court concluded that the defendants' use of the design and layout "was not incompatible with [the plaintiff's] own continuing usage." *Id.* Here, however, CVL has plausibly alleged that use and sharing of CVL's "confidential information" was "incompatible with" CVL's continued *confidential* use of that information or deprived CVL of the *value* of CVL's control of that information arising from the fact that it *was* confidential. *See id.* (including in the list of relevant factors for determining whether interference with the plaintiff's control of property was sufficiently severe the extent and duration of the actor's exercise of dominion and control, the resulting interference with the other's right of control, and the harm and inconvenience caused to the other). The decision in *Kendall/Hunt Publishing Company* does not establish that CVL's claim for conversion of its confidential information is either factually or legally insufficient.

The Nelson Defendants are not entitled to dismissal of CVL's "conversion" claim in Count XVII, alleging conversion of confidential information.

### d.    *Summary*

CVL's claims for "conversion" of "telephone numbers" and "confidential information" are not subject to dismissal, either for lack of a cognizable or viable legal theory, *see, e.g., Philadelphia Indem. Ins. Co.*, 732 F.3d at 649; *Somers*, 729 F.3d at 959; *Ball*, 726 F.3d at 469; *Commonwealth Property Advocates, L.L.C.*, 680 F.3d at 1202, or for failure to plead a plausible factual basis for that claim, *see Freitas*, 703 F.3d at 438; *Whitney*, 700 F.3d at 1128; *Richter*, 686 F.3d at 850.  Therefore, the part of the Nelson Defendants' Motion To Dismiss seeking dismissal of Count XVI (conversion of telephone numbers) and Count XVII (conversion of confidential information) of CVL's Second Amended Complaint is denied.

### 4.    *The § 258 claim*

Finally, the Nelson Defendants seek dismissal of CVL's claim against GLCC in Count XVIII of CVL's Second Amended Complaint alleging a violation of 47 U.S.C. § 258, which prohibits a telecommunications carrier from changing a subscriber's selection of the provider of telephone exchange services except in accordance with verified procedures established by the Federal Communications Commission (FCC).  The Nelson Defendants contend that § 258 does not apply, because the telephone numbers never switched carriers; CVL does not have "standing" to sue under § 258, where it is not a "carrier"; and § 258 does not apply, where CVL does not provide services qualifying as "telecommunications services."  In response, CVL argues that GLCC

violated § 258 by executing an unauthorized change order and that entities other than carriers can obtain damages for a violation of § 258.[7]

In Count XVIII of its Second Amended Complaint, CVL incorporates the previous paragraphs of its Second Amended Complaint, then alleges that "GLCC['s] transfer of the Program Numbers was made without the knowledge and consent of CVL and was not made in accordance with verification procedures prescribed by the [FCC]." Second Amended Complaint, Count XVIII, ¶¶ 180-181. CVL also alleges that "[t]he actions of GLCC otherwise violated the provisions of 47 U.S.C.A. § [258]," and that "CVL has been damaged as a result of GLCC's actions." *Id.* at ¶¶ 182-183. It appears, from the incorporated paragraphs of the Second Amended Complaint that the "transfer of the Program Numbers" is GLCC's "repointing" and "porting" of CVL's Program Numbers "away from CVL and to AudioNow," on April 10, 2012, based on AudioNow's assertion that it had the power of attorney to direct the "porting" of the numbers on behalf of certain radio stations that it claimed were the "end users" of the Program Numbers. *See, e.g., id.* at ¶¶ 45, 51, 53. GLCC remained the carrier and provider of telephone exchange services for the Program Numbers both before and after GLCC "ported" the Program Numbers from CVL to AudioNow.

*a. Statutory and regulatory provisions*

The statute on which CVL bases its claim in Count XVIII provides as follows:

---

[7] I find no response by CVL to the Nelson Defendants' contention that CVL does not provide "telecommunications services" within the meaning of § 258.

### § 258. Illegal changes in subscriber carrier selections

#### (a) Prohibition

*No telecommunications carrier shall submit or execute a change in a subscriber's selection of a provider of telephone exchange service or telephone toll service except in accordance with such verification procedures as the Commission shall prescribe.* Nothing in this section shall preclude any State commission from enforcing such procedures with respect to intrastate services.

#### (b) Liability for charges

*Any telecommunications carrier* that violates the verification procedures described in subsection (a) of this section and that collects charges for telephone exchange service or telephone toll service from a subscriber *shall be liable to the carrier previously selected* by the subscriber in an amount equal to all charges paid by such subscriber after such violation, in accordance with such procedures as the Commission may prescribe. *The remedies provided by this subsection are in addition to any other remedies available by law.*

47 U.S.C. § 258 (emphasis added).

As the Ninth Circuit Court of Appeals has explained, this provision, which is part of the Telecommunications Act of 1996, prohibits "slamming," which the court defined as "the practice in which a telecommunications carrier switches a consumer's telephone service without the consumer's consent," in § 258(a). *Clark v. Time Warner Cable*, 523 F.3d 1110, 1113, 1112 (9th Cir. 2008); *AT&T Corp. v. FCC*, 323 F.3d 1081, 1082 (D.C. Cir. 2003) (also defining "slamming" as a telecommunications carrier making unauthorized changes to subscribers' telephone service).

The Ninth Circuit Court of Appeals explained that "[t]he FCC is charged with the Act's administration, along with the administration of its predecessor, the Federal Communications Act of 1934." *Id.* at 1113. Specifically, the court explained, the statute

29

"authorizes the FCC to prescribe the procedures for the award of damages when the verification procedures of § 258(a) are violated." Id. at 1113. Specifically,

> Under this delegation of authority, the FCC established detailed and comprehensive procedures which telecommunications carriers must follow to verify a subscriber's consent to a carrier change, and established the penalties for violations.

*Clark*, 523 F.3d at 1113 (footnotes omitted). More specifically,

> While the particular procedures that are required vary depending on how the telecommunications carrier markets its services, FCC regulations require all carriers to confirm a subscriber's change order, either by signature, voice recording, or by an independent third party. 47 C.F.R. § 64.1120(a)(1), (c)(1)-(3).

*Clark*, 523 F.3d at 1113 n.2. Also,

> FCC regulations impose liability on carriers who violate § 258(a), 47 C.F.R. § 64.1140, and set forth detailed procedures for resolving unauthorized changes, *id.* § 64.1150-64.1160, and for reimbursing aggrieved subscribers, *id.* § 64.1170.

*Clark*, 523 F.3d at 1113 n.3.

### b.    Standing

Although it is not AudioNow's first contention concerning this claim, I will consider first AudioNow's contention that CVL lacks "standing" to pursue a claim of a violation of § 258. AudioNow argues, "Since [CVL] is not a carrier, it cannot recover money as a 'carrier previously selected' by CVL" and that, because "CVL is not seeking to recover any money earned by a transferee carrier[,] CVL cannot recover any monetary damages predicated upon a violation of 47 U.S.C. § 258." AudioNow's Brief (docket no. 230-1), 18. This argument appears to me to be better understood as a contention that § 258 does not provide a private right of action by a subscriber than as any sort of

constitutional "standing" argument. Indeed, CVL's response is that it "does have the basis for a private cause of action arising under 47 U.S.C. § 258." CVL's Resistance (docket no. 242), 2. CVL argues that § 258(b) expressly states that the remedies for slamming available to a previous carrier set out in that subsection "are in addition to any other remedies available by law." CVL also points to 47 C.F.R. § 64.1170 as indicating that *subscribers* as well as *carriers* may have a cause of action for a violation of § 248.

"[J]ust because 'a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" *See Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). Rather, whether a statute provides a private right of action depends upon the construction of the statute. *Id.* In deciding whether a federal statute provides a private right of action, this court must consider whether Congress intended that the statute would establish both a *right* and a *remedy*. *See id.*; *accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). "'"The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.'" *Id.* (quoting *Redington*, 442 U.S. at 578).

As the Ninth Circuit Court of Appeals observed in *Clark*, "[N]o court of appeals has considered the question of whether § 258 vests subscribers with a private right of action." 523 F.3d at 1114 n.7 (concluding that the court need not reach that question). Indeed, the only decision that I could find addressing this question is the decision of the United States District Court for the District of Connecticut in *Valdes v. Qwest Communications Int'l, Inc.*, 147 F. Supp. 2d 116 (D. Conn. 2001). The court in *Valdes* rejected a carrier's argument that individual customers did not have a private right of action pursuant to § 258. The court observed, "The statute may be read as having been created to benefit a special class, i.e., consumers who have had their long distance

carriers changed illegally." *Valdes*, 147 F. Supp. 2d at 124. Furthermore, the court explained,

> The plaintiffs argue that congressional intent to create a private cause of action is manifested in the plain language of 47 U.S.C. § 258, i.e., the mention of "other remedies available at law," coupled with the language of § 207, which encourages private causes of action against violators of the FTA. For these reasons, this Court . . . will not dismiss the present case on the issue of lack of a private right of action.

*Valdes*, 147 F. Supp. 2d at 124.

Like the court in *Valdes*, I conclude that there is a private right of action by a subscriber for a violation of § 258(a). First, I agree with the court in *Valdes* that § 258(a) "may be read as having been created to benefit a special class, i.e., consumers who have had their long distance carriers changed illegally." *Valdes*, 147 F. Supp. 2d at 124. To put it another way, the statute evinces Congress's intent to create a *right* of *subscribers* not to be subjected to a change in their telecommunications carriers without their authorization and verification. *Freeman*, 374 F.3d at 665 (explaining that, in deciding whether a federal statute provides a private right of action, a court must consider whether Congress intended that the statute would establish both a *right* and a *remedy*); *accord Gonzaga Univ.*, 536 U.S. at 284. The statute also evinces Congress's intent to create a *remedy* for the class of subscribers, *id.*, because, as CVL points out, § 258(b) expressly leaves open "other remedies available at law," besides those provided for a previous carrier.[8] *See Valdes*, 147 F. Supp. 2d at 124 (finding this statutory language indicated

---

[8] CVL also relies on a federal regulation, 47 C.F.R. § 64.1170, as indicating that an action by a subscriber for a violation of § 258 is authorized. That regulation establishes "[r]eimbursement procedures where the subscriber has paid charges" to a carrier to which a telecommunications carrier switched the subscriber without the subscriber's

intent to create a private right of action).  I cannot read § 258(b) to limit or restrict remedies to damages for previous carriers, as the Nelson Defendants seem to argue.  Like the court in *Valdes*, I am persuaded that 47 U.S.C. § 207 strongly indicates congressional intent to provide—indeed, it expressly provides—a private remedy for a subscriber injured by a violation of § 258.  Section 207 provides,

> *Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may* either make complaint to the Commission as hereinafter provided for, or may *bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction*; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207 (emphasis added).  Thus, the reason that § 258(b) expressly provides for remedies for a previous carrier for a violation of § 258(a) is that a previous carrier would not otherwise have such a remedy; the purpose of § 258(b) is not to preclude a subscriber from a remedy for a violation of § 258(a) pursuant to § 207, and § 258(b)'s "other remedies available at law" language reinforces that conclusion.  Therefore, these statutory provisions indicate congressional intent that subscribers, as well as carriers, have a private right of action for a violation of § 258.

The Nelson Defendants are not entitled to dismissal of CVL's § 258 claim in Count XVIII on the ground that the statute does not provide for a private right of action by a subscriber or give a subscriber "standing" to sue for a violation of its prohibitions.

---

authorization.  *See* 47 C.F.R. § 64.1170 (providing, however, in subsection (a) that the stated procedures "shall only apply after a subscriber has determined that an unauthorized change, as defined by § 64.1100(e), has occurred and the subscriber has paid charges to an allegedly unauthorized carrier").  An agency regulation does not establish, or even necessarily indicate, congressional intent, however.

### c.    *Statutory violation*

The Nelson Defendants also argue that they are entitled to dismissal of CVL's § 258 claim on the ground that CVL's allegations do not state a violation of that statute. This contention stands on much firmer ground.

More specifically, the Nelson Defendants argue that there was no violation of the statute, because there was no *change* in the carrier for the Program Numbers; the allegation is that GLCC simply took the numbers away from CVL and assigned them to AudioNow, but GLCC remained the carrier for those numbers. CVL counters that the statute, by its plain language, prohibits GLCC from submitting or executing any change in CVL's selection of a provider, "which is precisely what GLCC did." CVL's Resistance at 16. CVL argues that it had selected GLCC as its carrier and GLCC executed an order to change CVL's selection. CVL contends that GLCC is imposing an improper "gloss" on the statute by reading it to require an unauthorized change from one carrier to another—that is, a "two carrier" requirement for a violation.

What is missing from CVL's argument and Count XVIII of its Second Amended Complaint is any explanation or allegation of how there was any "change in a subscriber's selection of a provider of telephone exchange service or telephone toll service," either with or without authorization or verification, when GLCC "ported" the Program Numbers to AudioNow. *See* 47 U.S.C. § 258(a). This *statute* does not prohibit any other misconduct by a carrier. What CVL has alleged in Count XVIII and elsewhere in its Second Amended Complaint is that GLCC changed the purported *subscriber* of the Program Numbers from CVL to AudioNow, not that it changed the *carrier* of those Program Numbers.

Whether this flaw is understood as a failure to identify a viable legal theory to support a claim of a § 258(a) violation or failure to plead a plausible factual basis for a

§ 258(a) violation, it is fatal to this claim, and the Nelson Defendants are entitled to dismissal of this claim.

### d.    Summary

Although there is a private right of action by a subscriber for a violation of § 258, the statute prohibits an unauthorized or unverified change in a subscriber's telecommunications carrier, and CVL has not alleged such a change, but a change in the *subscriber* of the Program Numbers.  Thus, CVL's § 258 claim lacks either a cognizable or viable legal theory, *see, e.g., Philadelphia Indem. Ins. Co.*, 732 F.3d at 649; *Somers*, 729 F.3d at 959; *Ball*, 726 F.3d at 469; *Commonwealth Property Advocates, L.L.C.*, 680 F.3d at 1202, or a plausible factual basis, *see Freitas*, 703 F.3d at 438; *Whitney*, 700 F.3d at 1128; *Richter*, 686 F.3d at 850.  Therefore, the part of the Nelson Defendants' Motion To Dismiss seeking dismissal of Count XVIII of CVL's Second Amended Complaint is granted.


## III.    CONCLUSION

Upon the foregoing,

1.    Defendant AudioNow's March 10, 2014, Motion To Dismiss (docket no. 228) is **denied** in its entirety; and

2.    The Nelson Defendants' March 24, 2014, Motion to Dismiss (docket no. 230) is **granted in part and denied in part**, as follows:

    a.    The part of the Nelson Defendants' Motion To Dismiss seeking dismissal of the "fraud-based" claims against GLCC and Nelson in Counts VII and VIII of CVL's Second Amended Complaint is **denied**;

    b.    The part of the Nelson Defendants' Motion To Dismiss seeking dismissal of Count XVI (conversion of telephone numbers) and Count XVII

(conversion of confidential information) of CVL's Second Amended Complaint is **denied**; but

   c.      The part of the Nelson Defendants' Motion To Dismiss seeking dismissal of Count XVIII of CVL's Second Amended Complaint is granted.

**IT IS SO ORDERED**.

**DATED** this 6th day of May, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA